UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KELLY SUE ULMER,       Plaintiff, | : : : | CIVIL ACTION |
| v. | : : | |
| KILOLO KIJAKAZI, Commissioner of Social Security,[1] | : : | NO. 20-cv-04257-RAL |

**RICHARD A. LLORET**  December 20, 2021
**U.S. Magistrate Judge**

## MEMORANDUM OPINION

Kelly Sue Ulmer filed a claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") with the Commissioner of Social Security. Her claim was denied, and she filed this appeal. She alleges that the ALJ's decision is not supported by substantial evidence, particularly that the ALJ did not take full account of her physical condition when making her residual functional capacity finding. After careful review, I agree with the Commissioner and find that the ALJ's decision is supported by substantial evidence. For the reasons set forth below, I deny Ms. Ulmer's request for review and affirm the final decision of the Commissioner.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Kijakazi should be substituted for the former Commissioner of Social Security, Andrew Saul, as the defendant in this action. No further action need be taken to continue this suit pursuant to section 205(g) of the Social Security Act. 42 U.S.C. § 405(g) (Social Security disability actions "survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office").

## PROCEDURAL HISTORY

On July 18, 2017, Ms. Ulmer filed a claim for DIB and SSI, alleging a disability beginning on May 1, 2014. Administrative Record ("R.") 11. Her claim was initially denied on December 4, 2017. *Id.*

On January 31, 2018, Ms. Ulmer requested an administrative hearing before an ALJ. R. 162. The ALJ held a hearing on April 2, 2019, and issued a decision denying Ms. Ulmer's claim on June 4, 2019. R. 11, 23. On July 23, 2019, Ms. Ulmer appealed the ALJ's unfavorable decision to the Social Security Administration's Appeals Council. R. 250-52. The Appeals Council denied Ms. Ulmer's request for review on June 30, 2020. R. 1. On August 31, 2020, Ms. Ulmer filed this action in federal court. Doc. No. 1. The parties consented to the jurisdiction of a U.S. Magistrate Judge, Doc. No. 3, and have briefed the appeal, Doc. No. 11 ("Pl. Br."), 16 ("Comm'r Br.").

## FACTUAL BACKGROUND

### A. The Claimant's Background

Ms. Ulmer was twenty-seven years old on her disability onset date, making her a "younger person" under the regulations at all times relevant to her application. R. 22; 20 C.F.R. §§ 404.1563(c), 416.963(c). She has at least a high school education and worked as a fast food worker. R. 22. On July 18, 2017, Ms. Ulmer applied for DIB and SSI, alleging disability based on attention-deficit/hyperactivity disorder ("ADHD"), knee pain, and hip pain. R. 11, 114, 130.

### B. The ALJ's Decision

On June 4, 2019, the ALJ issued a decision finding that Ms. Ulmer was not disabled as defined by the Social Security Act. R. 12, 23. In reaching this decision, the

ALJ made the following findings of fact and conclusions of law pursuant to Social Security's five-step sequential evaluation.[2]

At step one, the ALJ concluded that Ms. Ulmer had not engaged in substantial gainful activity ("SGA") since May 1, 2014, which is the date of alleged disability onset. R. 13. At step two, the ALJ determined that Ms. Ulmer had the following severe impairments: "History of left distal radius fracture, left femoral shaft fracture, and sacral fracture; Status post surgery of right wrist; status post bilateral S1 joint fusion; History of methicillin-susceptible staphylococcus aureus (MSSA) cellulitis; Asthma; Depression; and [ADHD]." *Id.*

At step three, the ALJ compared Ms. Ulmer's impediments to those contained in the Social Security Listing of Impairments ("listing").[3] The ALJ found that Ms. Ulmer did not meet the clinical criteria of Listing 3.03, which concerns asthma. R. 14. The ALJ also found she did not meet the criteria of listings 12.04 or 12.11 for her mental impairments because she did not suffer one extreme or two marked limitations in the areas of functioning outlined under paragraph B of each listing.[4] *Id.*

---

[2] An ALJ evaluates each case using a sequential process until a finding of "disabled" or "not disabled" is reached. The sequence requires an ALJ to assess whether a claimant: (1) is engaging in substantial gainful activity; (2) has a severe "medically determinable" physical or mental impairment or combination of impairments; (3) has an impairment or combination of impairments that meet or equal the criteria listed in the social security regulations and mandate a finding of disability; (4) has the residual functional capacity to perform the requirements of his past relevant work, if any; and (5) is able to perform any other work in the national economy, taking into consideration his residual functional capacity, age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

[3] The regulations contain a series of "listings" that describe symptomology related to various impairments. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1. If a claimant's documented symptoms meet or equal one of the impairments, "the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). If not, the sequential evaluation continues to step four, where the ALJ determines whether the impairments assessed at step two preclude the claimant from performing any relevant work the claimant may have performed in the past. *Id.*

[4] An ALJ analyzes the following areas of functioning when determining whether functional limitations caused by a mental impairment meet paragraph B criteria: "understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or

Prior to undertaking her step four analysis, the ALJ assessed Ms. Ulmer's residual functional capacity ("RFC"), or "the most [Ms. Ulmer] can still do despite [her] limitations." 20 C.F.R. § 404.1545. The ALJ found that Ms. Ulmer could undertake medium work as defined by 20 C.F.R. § 404.1567(c), subject to certain limitations.[5] R. 16. At step four, the ALJ found that Ms. Ulmer is unable to perform her past relevant work as a fast food worker. R. 22. At step five, the ALJ identified two jobs that Ms. Ulmer could perform considering her age, education, work experience, and RFC: store laborer and factory helper. R. 22-23. Because the ALJ identified jobs that Ms. Ulmer could perform, she found that Ms. Ulmer was "not disabled." R. 23.

## STANDARD OF REVIEW

My review of the ALJ's decision is deferential; I am bound by her findings of fact to the extent those findings are supported by substantial evidence in the record. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "is more than a mere scintilla but may be less than a preponderance." *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). I may not weigh the evidence or substitute

---

managing themselves." R. 14; 20 C.F.R. Pt. 404, Subpt. P., App. 1. Here, the ALJ found that Ms. Ulmer had mild limitations in her ability to adapt or manage herself and moderate limitations in her ability to concentrate, persist, or maintain pace, but no limitations in the other functional areas. R. 15.

[5] Specifically, the ALJ found that Ms. Ulmer could perform medium work "except for[] never climbing ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch and crawl; frequently handling, feeling, and fingering bilaterally; never work at unprotected heights; occasionally be exposed to moving mechanical parts, humidity, wetness, extreme temperatures, and pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation; and simple, routine tasks." R. 16.

my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009) (reviewing court must defer to the ALJ's evaluation of evidence, assessment of the witnesses, and reconciliation of conflicting expert opinions).

The ALJ's legal conclusions and application of legal principles are subject to plenary review. *See Krysztoforski v. Chater*, 55 F.3d 857, 858 (3d Cir. 1995). I must determine whether the ALJ applied the proper legal standards in reaching the decision. *See Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984). Accordingly, I can overturn an ALJ's decision based on an incorrect application of a legal standard even where I find that the decision is supported by substantial evidence. *Payton v. Barnhart*, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (citing *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983)).

An ALJ must provide sufficient detail in her opinion to permit meaningful judicial review. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119-20 (3d Cir. 2000). An ALJ must also address all pertinent evidence on the record. *See id.* at 121-22. A reviewing court, by reading the ALJ's opinion as a whole against the record, should be able to understand why the ALJ came to her decision and identify substantial evidence in the record supporting the decision. *See Burnett*, 220 F.3d at 119-20; *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *Caruso v. Comm'r of Soc. Sec.*, 99 F. App'x 376, 379–80 (3d Cir. 2004) (unpublished) (examination of the opinion as a whole permitted "the meaningful review required by *Burnett*").

## DISCUSSION

Ms. Ulmer argues that the ALJ's findings are not supported by substantial evidence on the record as a whole. Doc. No. 11, at 3-5. In particular, Ms. Ulmer alleges

that the ALJ's RFC is not backed by substantial evidence and that the ALJ committed legal error by only identifying two jobs in the national economy that she could perform. *Id.*[6]

The Commissioner responds that the ALJ's RFC assessment is supported by substantial evidence. Doc. No. 16, at 7-13. In particular, the Commissioner asserts that Ms. Ulmer's subjective reports and activities of daily living support her capacity for simple, routine tasks; her medical treatment apparently resulted in significant improvement in her abilities to stand and walk and her overall physical ability; her mental health records reveal normal status evaluations and improved depression and ADHD symptoms; and her work history since her alleged disability onset date is inconsistent with her medical records and physical exams. *Id.* Furthermore, the Commissioner argues that substantial evidence supports the ALJ's step five finding that there exist two jobs in the national economy that Ms. Ulmer could undertake. *Id.* at 13-14.

After considering the parties' filings, I find that the ALJ's findings at steps four and five were supported by substantial evidence and that Ms. Ulmer's contentions are meritless.

**A. The ALJ's RFC finding was supported by substantial evidence.**

Ms. Ulmer essentially argues that the ALJ's RFC finding that she could undertake medium work with several limitations is not backed by substantial evidence. Doc. No. 11, at 3-5. In particular, Ms. Ulmer alleges that the ALJ erred by not incorporating a

---

[6] While I nevertheless reviewed Ms. Ulmer's record on the whole, I note that some of Ms. Ulmer's arguments had to be inferred from the language of the brief, as counsel does not delineate these arguments and neglects to cite any case law, while only citing one regulation.

tendency to be off-task for twenty percent of her workday into her RFC. *Id.*[7] However, I find that the ALJ thoroughly reviewed the record evidence, and her RFC finding and related conclusions were supported by substantial evidence.

> I. *The ALJ's conclusions in analyzing Ms. Ulmer's RFC were supported by substantial evidence.*

The ALJ properly considered the record evidence in finding that Ms. Ulmer's statements about the intensity, persistence, and limiting effects of her physical symptoms were inconsistent with her treatment records. R. 20. First, the ALJ noted that Ms. Ulmer's healthcare providers told her she could work light, part-time work a few months after her motor vehicle accident and "return to work at full duty with no restrictions based on her musculoskeletal impairments" as of July 2015. R. 20; 1333-34. The ALJ also explained that since Ms. Ulmer's September 2015 revision surgery, there is no indication she has required any further treatment for her musculoskeletal impairments. R. 20. The ALJ added that no physical examination since September 2015 has uncovered clinical abnormal findings, and Ms. Ulmer has "routinely presented within normal limits." *Id.* Regarding her rashes and cellulitis, the ALJ noted that treating physician Dr. Mascitti cleared Ms. Ulmer to work around food even while suffering an active outbreak. R. 20; 1081. The ALJ concluded, "In an abundance of caution, I find that the claimant can perform ... less than medium exertional functional capacity" and that this finding "takes into consideration[] the claimant's fractures and surgeries, but also her cellulitis flares, non-severe obesity/overweight status, and well-

---

[7] The ALJ's final hypothetical to the VE contains all of the restrictions which the ALJ eventually incorporated into her RFC finding, except that it also reflected a claimant who is off-task for twenty percent of a normal workday. R. 111-12. The VE responded by saying "if an individual cannot complete the tasks as assigned within the timeframe assigned, then they would not be held on that job very long." R. 112.

controlled asthma." R. 20. My review of the record indicates that the ALJ reasonably weighed Ms. Ulmer's record evidence and did not ignore contradictory evidence in reaching this conclusion.

As to her mental health impairments, the ALJ explained that Ms. Ulmer's testimony about her anxiety around people or large groups "is not consistent with her treatment records with Dr. Lirag." *Id.* She noted, and my review of the record confirms, that Ms. Ulmer "routinely presented with a grossly normal mental status examination." *Id.*; *see also* R. 59-73; 1276-1310; 1335-96 (Ms. Ulmer's mental health treatment records). The ALJ also explained that "[b]ased on the claimant's moderate limitations in maintain[ing] concentration" she restricted Ms. Ulmer "to simple, routine tasks." R. 20. I find no error in how the ALJ reached this conclusion.

Regarding the opinion evidence on the record, the ALJ did not defer or give any specific evidentiary weight to any administrative medical findings or medical opinions but wrote that she still gave them full consideration. *Id.* First, she found Dr. Mwachuku's July 2014 restrictions of Ms. Ulmer's work to be not persuasive,[8] as they were based on her condition shortly after her motor vehicle accident, were inconsistent with the medical evidence, and were lifted by the same office in June 2015.[9] R. 20-21. The ALJ did not find the opinion of consultative examiner Dr. Monfared to be persuasive either, because he said that Ms. Ulmer could continuously lift and carry up to 50 pounds (and up to 100 pounds occasionally), but she found that Ms. Ulmer's record

---

[8] Dr. Mwachuku of St. Luke's Orthopaedic Specialists recommended on July 17, 2014 that Ms. Ulmer work no more than 20 hours per week, stand not longer than two hours without breaks, and lift no more than five pounds with her right wrist. R. 1334.

[9] On June 24, 2015, Dr. Aaron Leatherman wrote that Ms. Ulmer could return to work "[f]ull duty, no restrictions." R. 1333.

supported an RFC for medium exertion[10] with further non-exertional limitations instead. R. 21.

As for the opinions of the two state agency consultants, the ALJ found medical consultant Dr. Raymundo's opinion to be persuasive in part, but she went beyond his recommendations in finding that Ms. Ulmer's limitations should include never climbing ladders, ropes, or scaffolds. R. 21. On the contrary, the ALJ found the opinion of state agency psychological consultant Dr. Ross to be not persuasive because, while Dr. Ross found Ms. Ulmer had no more than mild mental health functioning restrictions, the ALJ found that medical records since November 2017 demonstrate that Ms. Ulmer should be limited to simple, routine tasks. R. 21. The ALJ's evaluation of Ms. Ulmer's medical opinion evidence was error free.

Taken together, both the medical opinions and the objective medical findings provided substantial evidence for the ALJ's RFC determination. None of the medical opinion evidence that the ALJ reviewed indicated that Ms. Ulmer was unable to work. In fact, the ALJ imposed more stringent limitations on Ms. Ulmer than those found in three out of the four medical opinions. *See* R. 16, 20-21. My review of the objective medical findings demonstrates as well that while limitations were warranted, Ms. Ulmer was not wholly unable to work. *See, e.g.*, R. 64-68 (spring 2019 therapy notes showing improvements in anxiety, depression, and ADHD symptoms), 1076 (June 2016 pelvic x-ray showing no acute findings), 1090-93 (September 2016 primary care doctor's report showing no new concerns nor any particularly noteworthy conditions). Therefore, I will uphold the Commissioner's step four finding.

---

[10] The regulations define medium work as involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

> II.    *The ALJ did not err by refusing to find that Ms. Ulmer would be off task for twenty percent of a given workday.*

Ms. Ulmer argues that the ALJ erred by not incorporating a limitation into her RFC finding that she would be off task for twenty percent of a normal workday. Doc. No. 11, at 4-5. This argument is without merit.

As described above, I find that substantial evidence supports the ALJ's conclusion that Ms. Ulmer could maintain concentration while working on simple, routine tasks. Additionally, Ms. Ulmer's medical opinion testimony recommended limitations which were less restrictive than the limitations the ALJ ultimately suggested, indicating that the ALJ had been careful to ensure that Ms. Ulmer's RFC incorporates all reasonable limitations.

Ms. Ulmer argues that her condensed workdays at McDonald's and frequent breaks support a finding that she would remain off-task for twenty percent of a workday. Doc. No. 11, at 5. The ALJ addressed this issue by finding that Ms. Ulmer could not engage in her past relevant work as a fast food worker. R. 22. I see no correlation between Ms. Ulmer's breaks as a fast food worker and her ability to remain on-task for greater than eighty percent of her workday in a job suited for her RFC. Thus, I find that the ALJ fully and properly addressed this particular issue in her decision.[11]

**B.  The ALJ did not commit legal error by only finding two jobs in the national economy which Ms. Ulmer could work.**

Ms. Ulmer contends that the ALJ erred by only finding two positions in the national economy which she could perform given her RFC. Doc. No. 11, at 4-5. Social

---

[11] Ms. Ulmer also contends that because she can only work three hours per day, she already spends more than twenty percent of a given workday off-task. Doc. No. 11, at 5. However, Ms. Ulmer conflates her inability to work a full day in a job which the ALJ found she could no longer perform with her ability to remain on-task for eighty percent of a workday in a job that she can reasonably perform given her RFC. *See* R. 22. This argument is meritless.

10

Security regulations state that "[w]ork exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications."20 C.F.R. §§ 404.1566(b); 416.966(b). The plain text of the regulations indicates that ALJs are under no legal requirement to pinpoint three representative jobs in the national economy. Therefore, I find this contention to be meritless and hold that the ALJ did not commit legal error in making her step five finding.

Furthermore, a finding that a claimant has the RFC to perform medium work opens more opportunities in the national economy than merely those the ALJ named in her decision. The Social Security regulations state that "[i]f someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c). Based on the record, there are certainly light and sedentary jobs which Ms. Ulmer could undertake which would comport with her limitations. I find that the ALJ did not commit legal error.

## CONCLUSION

Ms. Ulmer is not entitled to relief on any of her claims. The ALJ's decision was supported by substantial evidence and Ms. Ulmer's contentions are meritless. Therefore, I deny Ms. Ulmer's request for review and affirm the final decision of the Commissioner.

BY THE COURT:

*s/ Richard A. Lloret*
**RICHARD A. LLORET**
**U.S. Magistrate Judge**